UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 09-68-P-S |
| | ) | |
| LEONARD JONES, | ) | |
| | ) | |
| Defendant | ) | |

### RECOMMENDED DECISION ON MOTION TO SUPPRESS

The defendant, charged with conspiracy to distribute and possess with intent to distribute cocaine base and ecstasy, in violation of 21 U.S.C. §§ 846 and 841(a)(1), Indictment (Docket No. 3), moves to suppress statements made and evidence seized during a traffic stop in Lewiston, Maine, on June 26, 2006. An evidentiary hearing was held before me on February 10, 2010, at which the defendant appeared with counsel. The arresting officer, Derrick St. Laurent of the Lewiston Police Department, testified for the government and was the only witness. No exhibits were offered, although the officer did draw a diagram, which was marked for identification, at the request of defense counsel. I recommend that the following findings of fact be adopted, and that the motion be denied.

### I. Proposed Findings of Fact

On June 26, 2006, in Lewiston, Maine, Derrick St. Laurent, a patrol officer with over six years' experience with the Lewiston Police Department, was parked in his cruiser on Pier Street, near the intersection with Walnut Street, at a point from which he could clearly see a crosswalk that crossed Walnut Street just beyond that intersection. He was trained in dealing with traffic infractions and had by that time participated in hundreds of traffic stops. He was observing the

1

crosswalk that day because there were several bars in the area, there was heavy foot traffic in the area at that time of year, people tended to cross Walnut Street at points other than the marked crosswalk, and the Lewiston police liked to enforce traffic and crossing regulations in that area for safety reasons.

While there were several individuals in the crosswalk, St. Laurent noticed a car approaching, traveling under the speed limit of 25 miles per hour. The car could have stopped to allow the pedestrians to finish crossing the street but did not do so, and came within a few feet of one of the pedestrians. St. Laurent does not remember whether he noticed that the driver was black or that the car had been rented from U-Save before he decided to stop it. St. Laurent, believing he had observed a violation of 29-A M.R.S.A. § 2056(4),[1] activated his emergency lights and pulled out onto Walnut Street behind the car. The driver, the sole occupant of the car, pulled over at the next intersection, where Walnut Street crosses Bartlett Street.

As he walked up to the driver's side of the car, St. Laurent noticed a baseball bat with its handle resting on the car's console, and several cell phones in the car. No other baseball equipment was visible. St. Laurent asked the driver for his license and registration. From the documents that the driver gave him, St. Laurent learned that the driver was the defendant, Leonard Jones, and that the car was rented. He asked the defendant why he had the baseball bat, and the defendant replied that he had it for protection.

St. Laurent then ran the defendant's name and date of birth through dispatch and learned that the defendant's Georgia driver's license was suspended. He asked the defendant whether he was aware that his license was suspended, and the defendant replied that he was. St. Laurent then asked the defendant about the cell phones, and the defendant said that they were all his, but

---

[1] "When traffic-control devices are not in operation, an operator must yield the right-of-way to a pedestrian crossing within a crosswalk when the pedestrian is on the same half of the way or approaching so closely as to be in danger." 29-A M.R.S.A. § 2056(4).

he could not explain why he had so many of them.  St. Laurent then asked the defendant whether he had any contraband, and the defendant produced a small amount of marijuana.

St. Laurent then asked the defendant to step out of the car and, when he did so, placed him under arrest for operating after suspension.  While searching the defendant's person incident to the arrest, St. Laurent found a total of $2,385 in cash in four different locations.  He asked the defendant about the money, and the defendant said that he was visiting his aunt in Lewiston and the cash was money he had earned from his lawn care work in Georgia.

At around this time, other patrol officers arrived as backup, and a woman arrived at the scene, moving around in an unusual manner and asking questions.  She identified herself as Patricia Harris, the defendant's aunt.  When St. Laurent asked her about the cash he had found, she replied that the defendant made good money working at an aquarium in Georgia.  St. Laurent then asked the defendant about what St. Laurent perceived as a discrepancy in the two explanations of the source of the cash, and the defendant looked confused but did not respond.

St. Laurent and one or two other officers searched the interior of the car, which was very clean.  He noticed that some of the side door panels looked as if they had been tampered with.  Side door panels are typical hiding places for narcotics, and it is routine for patrol officers to check the screws holding these panels to see whether they have been tampered with.  When the screws have been removed and replaced, it is fairly obvious that this has been done.  The officers found no other contraband in the car.

While the car was being searched, the defendant was seated in the back of St. Laurent's cruiser and Harris kept trying to approach it.  The defendant called out loudly, "Auntie, Auntie, they have your money."  Harris looked confused by this.  St. Laurent asked her to step farther away from the cruiser to prevent her from communicating with the defendant.

St. Laurent did not know the defendant, nor had he heard of him before making the stop. He would not have pulled the car over if it had not almost hit a pedestrian. He did not charge the defendant with a violation based on his failure to stop for the pedestrians in the crosswalk.

## II.  Discussion

Counsel for the defendant first argued that St. Laurent's "reasons for the stop are unsupportable," making all evidence generated by the stop inadmissible.  *See also* Motion to Suppress ("Motion") (Docket No. 31) at [1].  A traffic stop must be supported by reasonable and articulable suspicion of criminal activity.  *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984). In the context of a traffic stop, reasonable suspicion exists when the officer's actions were justified at their inception.  *United States v. Chhien*, 266 F.3d 1, 6 (1st Cir. 2001).  St. Laurent's testimony easily meets this standard.  He observed the defendant commit what he reasonably believed to be a traffic violation; he therefore had sufficient reason to stop him.

The defendant does not contend that St. Laurent lacked probable cause to arrest him once he learned that the defendant's driver's license was under suspension.  On the contrary, he concedes the existence of probable cause.  Motion at [1].  Therefore, he lacks any legal basis for a challenge to the search incident to arrest of his person or of the car that he was driving.  *See, e.g., United States v. Robinson*, 414 U.S. 218, 235 (1973) (search of person incident to arrest); *New York v. Belton*, 453 U.S. 454, 460 (1981) (search of passenger compartment of car incident to arrest).  Accordingly, the discovery of the cash and the appearance of the side door panels need not be suppressed.[2]

The government stipulated at the hearing that it would not seek to introduce into evidence at trial the defendant's responses to the questions posed by St. Laurent after he asked the

---

[2] To the extent that the defendant seeks to suppress the statement he made to his aunt, that was not elicited by police interrogation and therefore is admissible.  *See, e.g., United States v. Taylor*, 985 F.2d 3, 7 (1st Cir. 1993) (for statements to be suppressed, they must be elicited by interrogation by police or law enforcement officers).

4

defendant to step out of the car and arrested him. That leaves for consideration only the questions about the cell phones and contraband. At hearing, counsel for the defendant argued that the defendant was not free to leave at the time when these questions were asked and that the defendant was therefore in custody, making his responses inadmissible because no *Miranda*[3] warnings were given.[4]

A custodial setting necessitating *Miranda* warnings arises only where there is a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. *United States v. Quinn*, 815 F.2d 153, 160 (1st Cir. 1987).

> [S]omeone questioned at a routine traffic stop in a non-coercive setting need not be given the *Miranda* warning. In fact, *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] stops, which may be made on reasonable suspicion rather than probable cause, tend not to be treated as custodial unless they become unduly prolonged or especially restrictive.

*United States v. Teemer*, 394 F.3d 59, 66 (1st Cir. 2005) (citations omitted). Nothing about St. Laurent's interaction with the defendant before he arrested the defendant was unduly prolonged or especially restrictive. St. Laurent's testimony, the only evidence before the court, could not reasonably be interpreted to support either alternative.

With the exception of St. Laurent's questions asked after he arrested the defendant, and the defendant's answers thereby elicited, the motion to suppress should be denied.

### III. Conclusion

For the foregoing reasons, and with the exception noted, I recommend that the proposed findings of fact be adopted and the motion to suppress be **DENIED**.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[4] Counsel for the defendant also argued that "all statements [made] after probable cause to arrest existed," should be suppressed because the defendant was effectively in custody at that point. But, the case law is clear that a police officer's subjective intent to arrest does not govern the suppression analysis. *See, e.g., United States v. Campbell*, 942 F.2d 890, 893 n.1 (5th Cir. 1991) ("uncommunicated subjective intent" to arrest "is wholly irrelevant to a Fourth Amendment inquiry"); *United States v. Trueber*, 238 F.3d 79, 92 (1st Cir. 2001) (officer's intent relevant to Fifth Amendment inquiry only to extent it is communicated to defendant).

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 19th day of February, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge